UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NORTHERN FRAC PROPPANTS,                          CIVIL ACTION
LLC, ET AL.

VERSUS

REGIONS BANK, NA, ET AL.                    NO. 19-00811-BAJ-EWD

## RULING AND ORDER

This action seeks damages from Defendant Regions Bank, NA ("Regions") for having allowed Plaintiff Northern Frac Proppants, LLC's ("NFP") commercial checking account to be reassigned to a wholly separate corporate entity bearing a similar name. Plaintiffs' Amended Complaint asserts claims of breach of the Deposit Agreement governing NFP's account; violations of the Louisiana Uniform Fiduciaries Law, La. R.S. 9:3801, *et seq.* ("LUFL"); and negligence. (Doc. 46).

Now before the Court is Regions' **Motion For Summary Judgment (Doc. 66)**. Regions argues that Plaintiffs' action fails and must be dismissed because Plaintiffs' breach of contract and negligence claims are time-barred, and because the LUFL is inapplicable to Regions' conduct. (*See* Doc. 66-1). Plaintiffs oppose Regions' Motion. (Doc. 80). For the reasons stated herein, Regions' Motion will be granted, and Plaintiffs' action will be dismissed with prejudice.

## I.    BACKGROUND

The following facts are drawn from Regions' Statement Of Material Facts (Doc. 66-25, "RB SOF"), Plaintiffs' Response To Regions' Statement Of Material Facts (Doc.

80, "NFP's Response SOF"), Regions' Reply to Plaintiffs' Statement Of Additional Facts (Doc. 84-1, "RB Reply SOF"), the parties' joint Pretrial Order (Doc. 101-1, "Joint PTO"), and the record evidence submitted in support of these pleadings.

Plaintiff NFP is a Delaware LLC whose business is to locate and excavate "frac sand," a material used by oil and gas companies engaged in hydraulic fracturing ("fracking"). NFP is organized as a "series LLC," meaning that it can operate as a single umbrella entity with the ability to partition its assets and liabilities among various sub-entities. Plaintiffs Northern Frac Proppants, LLC Series 1 ("NFP Series 1") and Northern Frac Proppants, LLC Series II ("NFP Series 2") are each also Delaware LLCs, organized as sub-entities of NFP. Collectively, NFP, NFP Series 1, and NFP Series 2 form the NFP Series.

Non-party Kenneth Landgaard ("Landgaard") formed NFP in December 2012, as a successor to NF Holdings, LLC, yet another Delaware LLC engaged in the "frac sand" business. NFP's original Operating Agreement identifies Mr. Landgaard as NFP's sole member and manager. (Doc. 80-4 at §§ 1.01-Definitions, 4.03-Managers). Shortly after formation, however, non-party Jefferies Alston joined NFP as a member and manager. (Doc. 101-1 at §G(3)). Landgaard and Alston agreed that Alston would serve as NFP's CEO, with ultimate responsibility for managing NFP's day-to-day affairs. (RB SOF at ¶ 3; NFP's Response SOF at ¶ 3[1]). According to Landgaard,

---

[1] Plaintiffs offer a "[q]ualified" admission to this fact, yet fail to direct the Court's attention to any evidence supporting their qualification. (*See* NFP's Response SOF at ¶ 3). Accordingly, consistent with Local Civil Rules 56(c) and 56(f), Plaintiffs' "qualification" is disregarded, and this fact is deemed admitted as stated in Regions' Statement of Facts. *See Transportation & Logistical Servs., Inc. v. H & E Equip. Servs., Inc.*, No. 21-00118, 2022 WL 842858, at *1 n.1 & n.2 (M.D. La. Mar. 21, 2022) (Jackson, J.) (disregarding non-moving party's

Alston's role was "to take the ball and run." (Doc. 66-1 at p. 34). To this end, Alston was granted full authority to open and manage bank accounts on NFP's behalf. (RB SOF at ¶ 3; NFP's Response SOF at ¶ 3; *see also* Join PTO at §G(4)).

Alston lived in Amite, Louisiana, and was among Regions' biggest customers. (NFP's Response SOF at ¶¶ 20, 57; RB Reply SOF at ¶¶ 20, 57). Perhaps not surprisingly, then, Alston chose Regions' Amite branch when it came time to open a business account for NFP. Alston does not remember when (or whether) he visited Regions' Amite branch to open an account, but the record reflects that on January 11, 2013 Regions opened a business checking account in NFP's name ("Account 0083") (RB SOF at ¶¶ 4; NFP's Response SOF at ¶¶ 4; *see also* Joint PTO at §G(4)). The record also shows that when he opened Account 0083, Alston provided NFP's unique federal Employer Identification Number (EIN), designated himself as the authorized signer, and arranged for Account 0083's monthly statements to be mailed to 414 E. Mulberry Street, Amite, Louisiana, the business address of Alston Equipment (a separate business that Alston controlled). (RB SOF at ¶¶ 5-6; NFP's Response SOF at ¶¶ 5-6; Joint PTO at §G(5)).

---

unsubstantiated "denials" and deeming moving party's proposed Uncontested Material Facts admitted under Local Rule 56); *Lemings v. Taylor*, No. 18-cv-00768, 2021 WL 2585920, at *3 (M.D. La. June 23, 2021) (Jackson, J.) (moving parties' proposed uncontested material facts deemed admitted under Local Rule 56(f) where opposing party failed to submit an opposing statement of material facts meeting the requirements of Local Rule 56(c)).

The same analysis applies to the proposed facts set forth at paragraphs 5, 6, 8, 9, 12, 13, 14, 15, 17, 26, 27, 29, 30, 32, 33, and 35 of Regions' Statement of Facts. (*See* NFP's Response SOF at ¶¶ 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 17, 26, 27, 29, 30, 32, 33, and 35). These proposed facts are also deemed admitted due to Plaintiffs' failure to properly support their "qualified" admissions.

NFP opened Account 0083 subject to the terms of Regions' standard Deposit Agreement. (RB SOF at ¶ 10; NFP's Response SOF at ¶ 10). In relevant part, the Deposit Agreement requires Regions' customers to "exercis[e] reasonable promptness in examining your account statement each statement period," and imposes a strict 30-day limit on customers' ability to report and challenge unauthorized transactions. (RB SOF at ¶ 13; NFP's Response SOF at ¶ 13; Doc. 66-4 at pp. 25-26). Each of NFP's statements for Account 0083 contained similar warnings regarding NFP's duty to timely inspect the accuracy of all transactions, and to promptly report any fraudulent activity.  (RB SOF at ¶ 9; NFP's Response SOF at ¶ 9).

Here is where things get interesting. Plaintiffs contend that shortly after opening Account 0083, Alston implemented a scheme to divert business assets and opportunities *away* from NFP to a new company under Alston's control. For purposes of Plaintiffs' claims against Regions, the salient details of Alston's scheme are as follows[2]:

First, in August 2013, Alston organized Northern Frac Proppants *II*, LLC ("NFP II"), a *new* company bearing a deceptively similar name to NFP, but *not* related to the NFP Series. (Joint PTO at §G(8); NFP's Response SOF at ¶ 46; RB Reply SOF

---

[2] Plaintiffs' opposition papers recount Alston's scheme in considerably more detail than that provided here. And while Plaintiffs' additional color is certainly interesting, most of Plaintiffs' additional "facts" in this regard are mere surplusage because Alston is *not* a defendant to this action (rather, Plaintiffs have already pursued their claims against Alston in multiple other forums, as set forth below). Accordingly, the Court limits its focus to those elements of Alston's scheme that are the basis of Plaintiffs' claims against Regions Bank: Specifically, Alston's pledge of Account 0083 to Deutsche Bank, and Alston's re-assignment of Account 0083 to Alston's new company, neither of which (allegedly) could have been accomplished without Regions' participation.

at ¶ 46).

Then, in November 2013, Alston added non-party Brian Mora as an authorized signer to Account 0083. (RB SOF at ¶ 16; NFP's Response SOF at ¶ 16; Doc. 66-4 at p. 62). Mora's signatory status is reflected on an updated Non-Personal Account Maintenance and Signature Form bearing Mora's signature, effective November 19, 2013. (Doc. 66-4 at ¶ 17; *see also id.* at p. 62).

Thereafter, in December 2013, Alston entered *NFP II* into a loan agreement with Deutsche Bank AG, in order to obtain $77 million of financing to purchase an undeveloped frac sand mining property in Wisconsin. (NFP's Response SOF at ¶ 53; RB Reply SOF at ¶ 53). Under this loan agreement, Alston pledged Account 0083 to Deutsche Bank as collateral, despite *NFP* being Account 0083's actual owner. (NFP's Response SOF at ¶¶ 55-56; RB Reply SOF at ¶¶ 55-56). Regions knew of Alston's pledge, and obviously knew of NFP's ownership status at the time it was made. (NFP's Response SOF at ¶¶ 57-58; RB Reply SOF at ¶¶ 57-58). Yet, Regions still endorsed and enabled the pledge, by executing a Deposit Account Control Agreement (DACA) identifying Account 0083 as the property of *NFP II*, and relinquishing control of the same to Wells Fargo Bank, N.A., the administrator of the Deutsche Bank loan. (NFP's Response SOF at ¶¶ 67-68; RB Reply SOF at ¶¶ 67-68). NFP II could not have obtained the Deutsche Bank loan but for Regions' execution of the DACA. (NFP's Response SOF at ¶¶ 59-61; RB Reply SOF at ¶¶ 59-61).

Finally, on January 7, 2014, at Alston's direction, Mora emailed written instructions to Regions ordering that the name associated with Account 0083 be

changed from NFP to NFP II, and that the EIN associated with Account 0083 be changed from NFP's EIN to NFP II's EIN. (NFP's Response SOF at ¶ 62; RB Reply SOF at ¶ 62).[3] Regions dutifully complied, changing the EIN on Account 0083 to NFP II's EIN on January 8, 2014, and changing the name on Account 0083 to NFP II on March 31, 2014. (RB SOF at ¶¶ 22-23; NFP's Response SOF at ¶¶ 22-23).

In practical effect, Mora's January 7 order re-assigned ownership and control of Account 0083 from NFP to NFP II. Thereafter, tens of millions of dollars of NFP II's profits flowed through Account 0083, *none* of which was shared with NFP. (NFP's Response SOF at ¶¶ 92-93; RB Reply SOF at ¶¶ 92-93).

Prior to Mora's change order, Account 0083's statements were addressed to "NORTHERN FRAC PROPPANTS LLC," obviously reflecting *NFP's* ownership of the account. The *last* such statement is dated February 28, 2014, and shows an ending balance of $724,813.23. (RB SOF at ¶ 39; NFP's Response SOF at ¶ 39; *see* Doc. 66-4 at p. 63). After Mora's change order, Account 0083's were addressed to "NORTHERN FRAC PROPPANTS II LLC," obviously reflecting *NFP II's* ownership of the account. The *first* such statement is dated March 31, 2014, and shows an ending balance of $260,195.48. (RB SOF at ¶ 40; NFP's Response SOF at ¶ 40; *see* Doc. 66-4 at p. 66).

Importantly, NFP *admits* that it regularly received (and retained) its monthly account statements, albeit at the 414 E. Mulberry Street provided by Alston. (RB SOF at ¶ 7; NFP's Response SOF at ¶ 7; *see* Doc. 66-2 at pp. 34-35). NFP also admits that

---

[3] The record does not reveal Alston's motive for re-assigning Account 0083 from NFP to NFP II. It is hardly a stretch, however, to imagine that the re-assignment was related to NFP II's pledge of Account 0083 as collateral for the Deutsche Bank loan.

as of March 2013, Account 0083 was enrolled in online banking, making all transactions, statements, and account details available online at any time. (RB SOF at ¶ 8; NFP's Response SOF at ¶ 8). Despite these admissions, NFP insists that it did not know of Mora's re-assignment of Account 0083 from NFP to NFP II until years later, when Landgaard learned the facts in a separate lawsuit against Alston (as set forth below).

Even if NFP was initially unaware of Alston's duplicity, Landgaard's relationship with Alston deteriorated rapidly after March 2014, resulting in multiple lawsuits. First, in February 2015, NF Holdings—NFP's predecessor—sued NFP II, Alston, and others in Texas state court, in the matter styled *2011 NF Holdings, LLC, f/k/a NF Holdings v. Northern Frac Proppants, II, LLC, et al.*, DC-15-01754 (162nd Judicial District Dallas County, Texas). (RB SOF at ¶ 26; NFP's Response SOF at ¶ 26). Landgaard initiated this original Texas lawsuit because he believed Alston was defrauding him, and specifically alleged that Alston and others "acted in concert, conspired, and/or aided and abetted each other in the confiscation, theft conversion and wrongful appropriation of all of the plaintiff's assets" and "property." (RB SOF at ¶¶ 27-28; NFP's Response SOF at ¶¶ 27-28).

Then, in August 2017, *NFP* sued NFP II, Alston and others in Wisconsin state court, in the matter styled *2011 NF Holdings, LLC f/k/a NF Holdings, LLC, Northern Frac Proppants, LLC, et al. v. Northern Frac Proppants, II, LLC n/k/a Aquasize LLC et al.*, 2017 CV 000126 (Trempealeau County, Wisconsin). (RB SOF at ¶ 29; NFP's Response SOF at ¶ 29). Notably, in this case, NFP specifically alleged

that NFP II exercised improper ownership and control over Account 0083, that Alston and others fraudulently transferred NFP's bank account to NFP II, and even that "the NFP II Defendants changed the name on NFP's bank account but continued to use the same account to fund NFP II's day-to-day operations." (RB SOF at ¶ 30; NFP's Response SOF at ¶ 30).

And it didn't stop there. Also in 2017, Landgaard filed an individual action against Alston (and others) in Wisconsin state court, in the matter styled *Landgaard v. Daniel Koxlien, et al.*, Suit No. 2017 CV 000017 (Trempealeau County, Wisconsin). (RB SOF at ¶ 31; NFP's Response SOF at ¶ 31). This third lawsuit focused on Alston's creation of NFP II and NFP II's misappropriation of NFP's assets. (RB SOF at ¶ 32; NFP's Response SOF at ¶ 32). During discovery, Landgaard subpoenaed records from Regions—even though Regions was not a party to the case—including *all* Account 0083's bank statements, cancelled checks, wire transactions, and signature cards, which Regions produced not later than January 12, 2018. (RB SOF at ¶¶ 35-38, 41; NFP's Response SOF at ¶ 35-38, 41). Discovery in this action also revealed Brian Mora's January 7, 2014 email ordering Regions to change the name and EIN for Account 0083. (RB SOF at ¶ 42; NFP's Response SOF at ¶ 42). Thereafter, Mora's email *and* Account 0083's 2013 and 2014 bank statements were introduced as exhibits at Mora's July 10, 2018 deposition, where Mora specifically recounted re-assigning Account 0083 from NFP to NFP II. (*Id.*; *see* Doc. 66-22 at p. 7).

Again, Plaintiffs admit having enrolled Account 0083 in online banking, having received (and retained) the March 2014 statement in the ordinary course of business

8

(circa April 2014), *and* having received the March 2014 statement again in the course of the Landgaard action (circa January 2018). (RB SOF at ¶¶ 7-8, 41; NFP's Response SOF at ¶¶ 7-8, 41). Conspicuously absent from the record, however, is any indication of when (or whether) Plaintiffs reviewed the March 2014 statement, discovered the unauthorized re-assignment, or reported the same to Regions Bank. Instead, Plaintiffs vaguely recall having "become aware that the NFP Account had been pledged by and transferred to NFP II" at some point during the litigation against Alston. (Doc. 80-3 at ¶ 28; *see also* Doc. 80-50 at 14).

In any event, after settling their prior lawsuits against Alston and NFP II, Plaintiffs set their sights on Regions.[4] (*See* Doc. 1-2 at pp. 1-2). On November 22, 2019, Plaintiffs initiated this action, alleging that Regions' role in the pledge and re-assignment of Account 0083 amounts to breach of contract (Count I); multiple violations of the LUFL, La. R.S. 9:3801, *et seq.* (Count II); and negligence (Count III). (Doc. 1 at ¶¶ 86-103). Plaintiffs have since amended their complaint to provide additional detail to their claims, but the thrust remains the same: Region facilitated "a massive identity theft" by agreeing to change the name and EIN on Account 0083, "thereby handing over ownership and control of the account to [NFP II]," which, in turn, allowed NFP II "to secure a loan ... that enabling the wholesale misappropriation of Plaintiffs' valuable assets." (Doc. 46 at ¶ 2).

Now Regions moves for summary judgment, arguing that Plaintiffs' breach of

---

[4] The prior lawsuits recounted above were eventually "pushed" to arbitration and resolved in a global settlement for approximately $15 million. (*See* RB SOF at ¶ 33; NFP's Response SOF at ¶ 33; Doc. 66-1 at pp. 33-34).

contract and negligence claims are time-barred, and that the LUFL is inapplicable to its conduct.[5] (*See* Doc. 66). Plaintiffs oppose Regions' Motion. (Doc. 80).

## II.   ANALYSIS

### A. Standard

Federal Rule of Civil Procedure 56 provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant bears its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. Stated differently, "[i]f the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

### B. Discussion

The Court addresses Regions' arguments in the order they are presented: (1) Plaintiffs' breach of contract claims are time-barred under the one-year limitations

---

[5] Regions also argues that any "claims" under the Bank Secrecy Act, the Patriot Act, and Know Your Customer Regulations must be dismissed because "[n]either the Bank Secrecy Act, the Patriot Act nor KYC Regulations provide a private right of action and do not create a duty to support a negligence claim." (Doc. 66-24 at pp. 17-18). As noted in Plaintiffs' opposition, however, Plaintiffs are not pursuing freestanding Bank Secrecy Act, Patriot Act, or KYC claims. Rather, they seek recovery for breach of contract, negligence, and violations of the UFL. (Doc. 80-50 at pp. 16-19). Accordingly, the Court's analysis does not address these additional arguments.

period provided by the Louisiana Uniform Commercial Code, La. R.S. § 10:4-101, *et seq.* ("LUCC"), or, alternatively, the 30-day limitations period provided by the Deposit Agreement; (2) Plaintiffs' negligence claims are likewise time-barred under the UCC, or the one-year prescriptive period set forth at La. C.C. art. 3492; and (3) Plaintiffs' LUFL Claims Fail because the LUFL is not applicable to Regions' actions.

### i. Plaintiffs' Breach Of Contract Claim Is Time-Barred

Plaintiffs assert that by pledging Account 0083 to NFP II's benefit, and thereafter re-assigning Account 0083 from NFP to NFP II, Regions' breached its "duty of ordinary care," as set forth at Section I(4) of the Deposit Agreement (*see* Doc. 66-4 at p. 21), *and* its duty "to perform its obligations under the Deposit Agreement in good faith," as required by Section 1-304 of the LUCC, La. R.S. § 10:1-304. (Doc. 46 at ¶¶ 103-105).

In Louisiana, breach of contract claims are generally "subject to liberative prescription of ten years," measured from the date of the alleged breach. *All. Hosp., L.L.C. v. Esquivel*, 2020-0807 (La. App. 1 Cir. 2/24/21), 322 So. 3d 253, 256 (citing La. C.C. art. 3499). This general 10-year prescriptive period does not apply, however, where a more specific statute provides a different limitations period. *See id.* Here, Regions is alleged to have breached obligations arising from a standard-form commercial banking contract, and from the LUCC itself. The question is whether the LUCC provides a more specific limitations period governing the parties' conduct.

The answer is "yes." Specifically, Section 4-406 of the LUCC addresses claims arising from irregular transactions appearing on the face of a customer's statement. Section 4-406(c) requires banking customers to review their bank statements with

11

"reasonable promptness," and to "promptly notify the bank of the relevant facts" of any "unauthorized payment." La. R.S. § 10:4-406(c). In turn, Section 4-406(f) provides:

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (Subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the <u>item</u> is precluded from asserting against the bank the unauthorized signature or alteration.

La. R.S. § 10:4-406(f) (emphasis added). Louisiana courts interpret Section 4-406(f) to "impose[] an absolute bar to any customer claim based upon an unauthorized transfer not reported within one year after the bank statement has been made available." *Ducote v. Whitney Nat'l Bank*, 16-574 (La. App. 5 Cir. 2/22/17), 212 So. 3d 729, 734, *writ denied*, 2017-0522 (La. 5/26/17), 221 So. 3d 860).

Critically, the term "item" as used in Section 4-406(f) is defined *broadly* "to mean[] an <u>instrument</u> *or* a <u>promise</u> *or* <u>order</u> to pay money handled by a bank for collection *or* payment." La. R.S. § 10:4-104(a)(9) (emphasis added); *see Ducote*, 212 So. 3d at 734 ("'Item' is defined broadly to include an instrument, as defined in Section 3–104, as well as promises or orders that may not be within the definition of 'instrument.'" (interpreting La. R.S. § 10:4-104(a)(9)). In turn, the defined term "order" "means a written instruction to pay money signed by the person giving the instruction." La. R.S. § 10:4-104(b) (incorporating the definition of "order" set forth at La. Stat. Ann. § 10:3-103(a)(6)).

Synthesizing these various provisions, Section 406(f) bars customer claims related to unauthorized written orders to pay, where the customer seeks to pursue

such claims more than one year after the unauthorized order appeared on the customer's bank statement. This interpretation is consistent with Louisiana caselaw, which has applied Section 406(f) expansively to bar a wide variety of untimely customer claims, *including* claims related to funds drawn from one account and paid to another. *See Ducote*, 212 So. 3d at 733 (holding that Section 406(f) barred claims related to executive assistant's unauthorized transfer of funds from customer's bank account to pay credit card account, where unauthorized transfers were reflected in "debit memos" provided with customer's monthly statements).

Here, Plaintiffs complain of Regions' involvement in transactions resulting in an unauthorized pledge of Account 0083 to Deutsch Bank, and an unauthorized name/EIN change, the sum of which resulted in the wholesale re-assignment—*i.e.* transfer—of Account 0083 from NFP to NFP II. This transfer was initiated *in writing* by Brian Mora, an *authorized* signatory on Account 0083. In purpose and effect, Mora's January 7, 2014 email directing Regions to re-assign Account 0083 from NFP to NFP II was an "order to pay money," La. R.S. § 10:4-104(a)(9), which was thereafter reflected on the March 2014 statement addressed to NFP II, *not* NFP. As such, the March 2014 statement is an altered "item" within the meaning of Section 406(f), which should have been promptly reviewed and reported to Regions. La. R.S. § 10:4-406(c); *see Ducote*, 212 So. 3d at 733 (holding that "debit memos" created by bank in response to executive assistant's emails directing the bank to pay a credit card balance from customer's bank account were "items," and that withdrawals evidenced by the "debit memos" were "funds transfers governed by the UCC").

13

Plaintiffs failed to promptly review and report the unauthorized reassignment when they received the March 2014 statement in the ordinary course of business (circa April 2014), and *again* when they received the March 2014 statement through discovery in the Landgaard action (circa January 2018). Instead, Plaintiffs waited until November 2019 to initiate this action challenging Regions' role in the transfer. By any measure, Plaintiffs' contract claim is barred by the one-year limitations period set forth at La. R.S. § 10:4-406(f). *See Ducote, supra*, 212 So. 3d at 734-35 (customers' claims of rescission and nullification of credit card contracts barred by La. R.S. § 10:4-406(f) where customer failed to pursue claims within one year of the last fraudulent transaction (collecting cases)).[6]

Plaintiffs object to this analysis, arguing that their contract claim is not subject to Section 4-406(f)'s one-year limitations period, and that, in any event, their claim is timely under the doctrine of *contra non valentum*. (Doc. 80-50 at pp. 19-28). The Court is not persuaded.

Plaintiffs' first argument—that Section 4-406(f) is inapplicable—proceeds in two directions. First, Plaintiffs simply assert that the LUCC "imposes an obligation of good faith" in the performance of all commercial contracts, and thus their claim for breach of the Deposit Agreement is "'personal' and governed by [the] ten year prescriptive period" generally applicable to contract actions. (Doc. 80-50 at 19). Plaintiffs offer no authority for this interpretation of the LUCC, and the argument is

---

[6] Having determined that Plaintiffs' contract claim is barred by La. R.S. § 10:4-406(f), the Court does not address Regions' alternative argument that Plaintiffs' claim is time-barred by the 30-day limitations period set forth in the Deposit Agreement.

easily dispatched. As set forth above, Louisiana's general 10-year prescriptive period for personal actions does *not* apply where more specific legislation provides otherwise. *See Smith v. Citadel Ins. Co.*, 2019-00052 (La. 10/22/19), 285 So. 3d 1062, 1067. Here the LUCC—more specific legislation broadly applicable to commercial banking transactions—preempts the general 10-year prescriptive period for contract actions, and provides the proper measure of the timeliness of Plaintiffs' claims.

Next, Plaintiffs argue that Section 4-406(f) must be construed narrowly to apply *only* "to claims predicated on a bank's improper payment of an item with an unauthorized signature or other form of alteration." (Doc. 80-50 at p. 22).[7] There is some appeal to this argument, insofar as it arises from the text of Section 4-406(f) itself. *See* La. R.S. § 10:4-406(f). Still, however, this argument fails. Why? Because, quite simply, it misconstrues the breadth and scope of transactions covered by the LUCC. As set forth above, the facts in this case fall squarely under Section 4-406(f), because the unauthorized re-assignment was accomplished by means of a written order, thereafter reflected on the face of the March 2014 statement.

Finally, Plaintiffs argue that, in any event, their claim is timely under the doctrine of *contra non valentum* because they initiated this action within one-year of

---

[7] Here, at least, Plaintiffs direct the Court's attention to one Louisiana case supporting their interpretation of the LUCC, albeit in a footnote. (Doc. 80-50 at p. 24 n.110). Specifically, Plaintiffs cite *Voros v. Dorand*, 08-667 (La. App. 5 Cir. 5/26/09), 15 So. 3d 1083, where the Louisiana Fifth Circuit Court of Appeal determined that a customer's claims to recover funds related to forged checks were timely under the 10-year prescriptive period provided by La. C.C. art. 3499. Notably, however, the bank defendant in *Voros* never raised La. R.S. § 10:4-406 as a defense, and therefore it was not addressed by the Court of Appeal. As such, *Voros* is not helpful to this Court's analysis, particularly because, as explained, the facts of this case fall squarely under Section 4-406(f).

15

discovering Regions' malfeasance. This argument also fails.[8]

Louisiana's doctrine of *contra non valentum* embodies the concept of the "discovery rule," *Campo v. Correa*, 2001-2707 (La. 6/21/02), 828 So. 2d 502, 509, which prevents the running of prescription "where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Whitnell v. Menville*, 540 So. 2d 304, 308 (La. 1989). Under the discovery rule, the Court measures prescription from "the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant." *Teague v. St. Paul Fire & Marine Ins. Co.*, 2007-1384 (La. 2/1/08), 974 So. 2d 1266, 1275. "Put more simply, the date of discovery is the date the negligence was discovered or should have been discovered by a reasonable person in the plaintiff's position." *Id.*

Here, the March 2014 statement plainly reflected that ownership of Account 0083 had been transferred to NFP II. Plaintiffs do not dispute having received this statement circa 2014. More important, Plaintiffs also admit that they received this statement *again* in January 2018, after initiating multiple rounds of litigation

---

[8] The Court acknowledges that Louisiana jurisprudence casts doubt regarding whether the equitable doctrine of *contra non valentum* even applies when, as here, the Plaintiffs' claims are governed by the LUCC. *See ASP Enterprises, Inc. v. Guillory*, 2008-2235 (La. App. 1 Cir. 9/11/09), 22 So. 3d 964, 973–74 (discussing *Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp.*, 2007-2206 (La. App. 1 Cir. 6/6/08), 992 So. 2d 527, 531, *writ denied*, 2008-1478 (La. 10/3/08), 992 So. 2d 1018, *writ denied*, 2009-2464 (La. 1/29/10), 25 So. 3d 834)). Still, even assuming that the doctrine applies, it cannot save Plaintiffs' claims, for reasons set forth below.

alleging that Alston improperly pledged Account 0083 to secure NFP II's loan from Deutsche Bank, changed the name on Account 0083, *and* fraudulently transferred Account 0083 to NFP II. (RB SOF at ¶¶ 30-32; NFP's Response SOF at ¶¶ 30-32; *see also* Doc. 80-50 at 14 ("Landgaard learned in discovery in the ... litigation against Alston that the name and EIN on the NFP Account had been changed."). Putting aside Plaintiffs' initial failure to review the March 2014 statement and to dispute the re-assignment, Plaintiffs' *own* pleadings in the prior litigation show that they *unquestionably* had obtained sufficient notice to "excite attention," put them on guard, and call for additional inquiry when they received the March 2014 statement from Regions in January 2018, in response to Landgaard's subpoena. *See Teague*, 974 So. 2d at 1275. Still, Plaintiffs waited nearly two years, until November 2019, to initiate this action. Again, by any measure, Plaintiffs' claim is expired.

### ii.  Plaintiffs' Negligence Claim Is Time-Barred

The foregoing analysis also makes quick work of Plaintiffs' negligence claim. Whether measured against the 1-year limitations period provided by Section 4-406(f), or the 1-year prescriptive period generally applicable to delictual actions, La. C.C. art. 3492, the result is the same: Plaintiffs' negligence claim is also expired.

### iii.  Plaintiffs' LUFL Claims Fail As A Matter Of Law

In Count II, Plaintiffs allege that Regions' pledge and re-assignment of Account 0083 violated Sections 3807, 3808, and 3809 of the LUFL, La. R.S. §§ 9:3807, 9:3808, 9:3809. Regions argues that these claims must also be dismissed for two reasons. First, LUFL Sections 3807 and 3809 are each inapplicable to Regions' conduct because "Section 3807 concerns checks drawn on an account in the name of a fiduciary

17

as such, and Section 3809 concerns checks drawn on a fiduciary's personal account," yet, "[n]either situation is present here." (Doc. 66-24 at p. 24 n. 131). Second, in any event, the LUCC governs Regions' conduct (for reasons set forth above), thus preempting any claims under the LUFL. (Doc. 66-24 at 23).

Plaintiffs do not respond to—and therefore concede—Regions' argument that LUFL Sections 3807 and 3809 are inapplicable on their face.[9] Regardless, the Court agrees with Regions that these Sections are inapplicable when, as here, the dispute concerns only the re-assignment of the principal's (NFP's) commercial account to a new corporate entity, *not* funds illicitly deposited to the fiduciary's (Alston's) personal credit. *See* La. R.S. §§ 3807, 3809. Plaintiffs' claims under LUFL Sections 3807 and 3809 must be dismissed.

This leaves only Plaintiffs' claim under LUFL Section 3808. Again, however, Section 3808 is plainly inapplicable, insofar as it concerns only *checks* "drawn upon the account of [the] principal." La. R.S. § 9:3808. Here, Plaintiffs do *not* complain of unauthorized checks paid from Account 0083. Rather, Plaintiffs complain of an unauthorized re-assignment, which was accomplished by way of an "order" under the

---

[9] Generally speaking, a party waives an issue by failing to adequately brief it. See *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001). Moreover, the Local Rules require that parties support their arguments with "a concise statement of reasons ... and citations of authorities," M.D. La. LR 7(d), and this Court has repeatedly admonished that it will not speculate on arguments that have not been advanced, or attempt to develop arguments on a party's behalf. *See Spell v. Edwards*, No. 20-cv-00282, 2022 WL 131249, at *13 n.7 (M.D. La. Jan. 12, 2022) (Jackson, J.) (citing *Gray v. City of Denham Springs*, No. 19-cv-00889, 2021 WL 1187076, at *5 (M.D. La. Mar. 29, 2021) (Jackson, J.)) Pursuant to the Court's Local Rules, and consistent with the general rule that a party's failure to adequately brief an issue acts as a waiver, the Court determines that Plaintiffs have waived their opposition to dismissal of these claims.

18

LUCC. Thus, again Plaintiffs' claim fails and must be dismissed.

In sum, the LUFL simply does not apply here. Instead, as set forth above, the LUCC governs Regions' conduct, and operates to bar Plaintiffs' claims. *See Ducote*, 212 So. 3d at 732 (explaining that the LUCC "is the primary source of commercial law rules in areas that it governs, and its rules represent choices made by its drafters and the enacting legislatures about the appropriate policies to be furthered in the transactions it covers.").

### III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Regions' **Motion For Summary Judgment (Doc. 66)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' action be and is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the parties' pending motions *in limine* and related motions **(Docs. 67, 68, 69, 70, 71, 73, 89, 91, 98, 106)** be and are hereby **TERMINATED AS MOOT**.

Judgment shall issue separately.

Baton Rouge, Louisiana, this 29th day of April, 2022

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**